UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CHRISTIE L NAFZIGER,**

    **Plaintiff,**

v.                                                 Case No: 8:19-cv-2511-T-35TGW

**GOSPEL CRUSADE, INC.,**

    **Defendant.**

## ORDER

**THIS CAUSE** comes before the Court for consideration of the Motion to Dismiss filed by Defendant, Gospel Crusade, Inc., (Dkt. 16); Defendant's Motion to Strike, (Dkt. 17); and the Response in opposition to both Motions filed by Plaintiff, Christie L. Nafziger. (Dkt. 22) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss and **DENIES AS MOOT** Defendant's Motion to Strike.

**I.     BACKGROUND**

Defendant Gospel Crusade, Inc. operates a church as well as a resort and conference center on its property. (Dkt. 3 at ¶ 18) Defendant also produces video content for promotional purposes and for use on Christian Television Network. (Id.) Plaintiff, Christie L. Nafziger, began working for Defendant in November of 2009 as an Accounts Clerk and in video production, although she previously worked as a volunteer for the six years immediately preceding her employment beginning in 2003. (Id. at ¶ 17) Plaintiff was terminated on November 30, 2018 allegedly for poor performance, although it appears a termination meeting was not held until February 23, 2019. (Id. at ¶¶ 29, 45–59)

Plaintiff's Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination was filed on March 11, 2019. (Dkt. 3-2 at 4) On June 12, 2019, Plaintiff received an EEOC Letter of Determination regarding the EEOC's findings as to her claims, and on July 11, 2019 she received a Notice of Right to Sue. (Id. at 1–3) On October 10, 2019, Plaintiff filed this action against Defendant in district court alleging retaliation and sex discrimination under the Florida Civil Rights Act ("FCRA") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), marital status discrimination under the FCRA, negligent retention, and assault. (Id.)

On December 2, 2019, Defendant filed this Motion Dismiss challenging the sufficiency of Plaintiff's factual assertions and arguing that Plaintiff failed to exhaust her administrative remedies for the Tittle VII and FCRA claims prior to filing the Complaint. (Dkt. 16 at 1–2) Simultaneously, Defendant filed a Motion to Strike paragraphs 33 and 34 of the Complaint, asserting that they "are immaterial, scandalous, and would cause undue prejudice . . . ." (Dkt. 17 at 2) Defendant also seeks to strike Plaintiff's request for injunctive relief as well as Plaintiff's request for liquidated damages.

In her response, Plaintiff asserts that she fulfilled all administrative prerequisites and that Defendant's arguments "lack merit" and should "be couched as affirmative defenses," not considered as the basis for a motion to dismiss. (Id. at 1–3) As to the Motion to Strike, Plaintiff asserts that Paragraphs 33 and 34 were not included for scandalous purposes, but rather "to evince a disturbing pattern of treatment of female employees," as the matter referenced in those paragraphs involved an allegation of assault litigated in a Minnesota federal court in which Defendant was named as a party. (Dkt. 22 at 10)

2

Upon review of the Complaint against the prevailing low threshold for pleading a claim, the Court finds that Plaintiff has plausibly alleged claims for retaliation (Counts One and Two), sex discrimination (Counts Three and Four), marital status discrimination (Count Five), and assault (Count Seven). (See Dkt. 3) These allegations must be taken as true for purposes of addressing the Motion to Dismiss. Therefore, for the reasons that follow, Defendant's Motion to Dismiss is **GRANTED** as to the negligent retention claim pleaded in Count Six. The Motion is otherwise **DENIED**.

## II.   LEGAL STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al., 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1968–69 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to provide the "grounds" for his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 127 S. Ct. at 1964–65). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the

factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

## III.   DISCUSSION

Defendant moves to dismiss the Complaint for several reasons. First, Defendant argues that Plaintiff failed to exhaust her administrative remedies for all Title VII and FCRA claims prior to filing suit because the Charge of Discrimination does not allege facts to support such claims. (Dkt. 16 at 1) Next, Defendant argues that, with the exception of the marital status discrimination claim, all other Counts in the Complaint fail to state a claim. (Id. at 2) Finally, in regard to Plaintiff's claims of sex discrimination, Defendant argues that these claims should be dismissed with prejudice because the Charge of Discrimination and the Complaint "only allege facts regarding discrimination based on sexual orientation, which is not a valid basis for relief under Title VII or the FCRA." (Id. at 2)

As a threshold matter, the Court notes that Defendant's argument that Plaintiff failed to exhaust her administrative remedies fails. Specifically, Defendant asserts that Plaintiff's claims for retaliation, sex discrimination, and marital status discrimination should be dismissed because Plaintiff's EEOC Charge did not include these grounds. (Dkt. 16 at 7 (citing Dkt 3-2 at 4–5)) Plaintiff responds that she has exhausted all administrative remedies for all claims. (Dkt. 22 at 1) Specifically, as to the retaliation claims, Plaintiff asserts that she "complain[ed] her employer was treating her unlawfully." (Id. at 2) As to the claims for sex discrimination, Plaintiff asserts that "sexual orientation is sex discrimination." (Id. at 1–2)

4

The Court finds that Plaintiff has exhausted all administrative remedies. Notably, Plaintiff included her EEOC Letter of Determination as an exhibit to her Complaint. (Dkt. 3-2) Therein, the second paragraph makes clear that Plaintiff's allegations in the Charge of Discrimination were sufficient to exhaust her administrative remedies with respect to the broad spectrum of claims asserted here. (Id. at 1) Specifically, the Letter of Determination reads: The Charging Party "alleges she was harassed and ultimately discharged based on her sex/sexual orientation or perceived sexual orientation" and that her employer "harassed her regarding her living arrangements and terminated her employment under the pretext of poor performance." Id.

### A. Title VII and FCRA

Counts One through Five of the Complaint are filed pursuant to Title VII and the FCRA. (Dkt. 3) Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA") prohibit employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1); Fla. Stat. § 760.10(1). The FCRA further prohibits discrimination "against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . marital status." Fla. Stat. § 760.10(1)(a).

"Claims under Title VII and the FCRA are analyzed under the same burden-shifting framework because the FCRA was modeled on Title VII." Gamboa v. Am. Airlines, 170 F. App'x 610, 611 (11th Cir. 2006) (citing Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998)). "Because the same *prima facie* case and burden-shifting mechanisms apply to Title VII and FCRA discrimination claims, decisions construing Title VII are applicable to FCRA claims brought in federal court." Id.

A plaintiff may establish a *prima facie* case of discrimination through either direct or circumstantial evidence. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Absent direct evidence of discrimination, Plaintiff must prove her claim through the McDonnell Douglas burden-shifting framework. 411 U.S. 792 (1973). Under this framework, Plaintiff must first establish a *prima facie* case of employment discrimination. See id. If Plaintiff establishes a *prima facie* case, the burden then shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the employment action. Id. If Defendant meets this burden of production, the presumption of discrimination raised in Plaintiff's *prima facie* case is rebutted. Id.; see also Rice-Lamar v. City of Fort Lauderdale, 232 F.3d 836, 842–43 (11th Cir. 2000) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). Plaintiff must then show that Defendant's proffered legitimate, nondiscriminatory reason is pretextual. McDonnell Douglas, 411 U.S. 79.

### i. Retaliation Claims

Defendant asserts that Plaintiff has failed to adequately plead a claim for retaliation under both Title VII and the FCRA because the Complaint "fails to plead that she engaged in statutorily protected activity," and therefore, her retaliation claims must be dismissed. (Dkt. 16 at 2)

"To establish a claim of retaliation under Title VII . . . a plaintiff must prove that [s]he engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." Butler v. Alabama Dept. of Transp., 536 F.3d 1209, 1212–13 (11th Cir. 2008) (quoting Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008)). "To establish a causal connection, a plaintiff

6

must show that the relevant decisionmaker was 'aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated.'" Kidd v. Mando Am. Corp., 731 F.3d 1196, 1211 (11th Cir. 2013) (internal citations omitted).

Title VII directs that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . *because he has opposed any practice made an unlawful employment practice* by this subchapter . . . ." See 42 U.S.C. § 2000e-3 (emphasis added)); see also E.E.O.C. v. Total System Services, Inc., 221 F.3d 1171, 74 (11th Cir. 2000). The Supreme Court held in Crawford v. Metro. Gov't of Nashville & Davidson County that the term "oppose" in this context takes its ordinary meaning: "to resist or antagonize . . . ; to contend against; to confront; resist; withstand." 555 U.S. 271, 276 (2009); see also Demers v. Adams Homes of Nw. Fla., Inc., 321 F. App'x 847, 852 (11th Cir. 2009). The Crawford Court concluded that an employee engaged in statutorily protected opposition where she disclosed discrimination not on her own initiative, but in response to an internal investigation. Id. The Court explained that "'[o]ppos[ition]' goes beyond 'active, consistent' behavior" and includes instances in which an individual "has taken no action at all to advance a position beyond disclosing it." Id. at 277; see also Thampi v. Manatee Cty. Bd. of Comm'rs, 384 F. App'x 983, 990 (11th Cir. 2010). Moreover, the Court was clear that "courts would call it opposition if an employee took a stand against an employer's discriminatory practices not by instigating action, but by standing pat . . . ." Crawford, 555 U.S. at 276.

With that precept in mind, the Court finds that Plaintiff's Complaint establishes a *prima facie* case of retaliation at this stage of litigation. Although the Complaint does not list any examples of Plaintiff *verbally* opposing Defendant's alleged discriminatory

treatment, it does include several instances of Plaintiff's refusal to comply with Defendant's alleged discriminatory requests. Notably, the Complaint lists more than five dates in which Defendant explicitly told Plaintiff that her job was contingent on her modifying her living arrangement, specifically referencing her "separat[ion] from her husband" and moving in with her former co-worker, who is female. (Dkt. 3 at ¶¶ 19–27, 35–37, 40–43, 68) Plaintiff declined to accede to these demands. Based on these facts, a jury could reasonably find that on multiple occasions, Plaintiff's non-verbal actions demonstrated defiance or "opposition" to Defendant's alleged discriminatory requests. Therefore, the Court finds that Plaintiff's repeated acts of non-verbal "opposition" satisfy the low threshold required to plead retaliation at this stage of the proceedings. Accordingly, Defendant's Motion to Dismiss as to Counts One and Two is **DENIED**.

ii. Sex Discrimination Claims

Defendant also asserts that Plaintiff's sex discrimination claims should be dismissed, with prejudice, because the facts in the Complaint allege discrimination based upon sexual orientation discrimination, not sexual discrimination. (Dkt. 16 at 11) Plaintiff responds that "[h]arassment and termination of Plaintiff based on her employer's assumption that she has or had a romantic relationship with someone of the same sex is [included in the definition of] sex discrimination." (Dkt. 22 at 5–6)

To establish a *prima facie* case of sex discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably. See Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

The paramount question presented here is whether discrimination based on sexual orientation is a form of sex discrimination under Title VII and the FCRA. Notably, the Supreme Court has recently clarified this issue in Bostock v. Clayton Cty. 590 U. S. ____ (2020), Nos. 17-1618, 17-1623 and 18-107, 2020 U.S. LEXIS 3252, at *1.

The Court held that "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex," and thus, "an employer who fires an individual merely for being gay or transgender violates Title VII." Id. at *2, *21. The decision combines cases from three circuit courts, including the Eleventh Circuit, all of which involved an employer who allegedly fired a long-time employee for being gay or transgender.[1]

The question before the Court was a straightforward one:

> [W]hether an employer can fire someone simply for being homosexual or transgender. The answer is clear. An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex. Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids.

---

[1] In the first case, Bostock v. Clayton Cty. Bd. of Comm'rs, Gerald Bostock was fired from his job as an official in the Clayton County, Georgia, judicial system for "conduct unbecoming of its employees" after he joined a gay softball league. No. 1:16-CV-1460-ODE, 2017 U.S. Dist. LEXIS 217815, at *3 (N.D. Ga. July 21, 2017), aff'd, 723 F. App'x 964 (11th Cir. 2018). On appeal, the Eleventh Circuit affirmed the district court's determination that Title VII does not protect employees from discrimination based on sexual orientation and Bostock appealed. Id. at 723 F. App'x 964. In the second case, Zarda v. Altitude Express, Donald Zarda alleged that he was fired from a skydiving company because he did not conform to the sex stereotype that men should be attracted only to women. No. 10-CV-4334(JFB)(ARL), 2014 U.S. Dist. LEXIS 203140, at *1 (E.D.N.Y. Mar. 28, 2014), rev'd, 883 F.3d 100 (2d Cir. 2018). The Second Circuit agreed with Zarda that Title VII bars discrimination based on sexual orientation and the employer appealed. Id. 883 F.3d at 108. The EEOC filed the third lawsuit, involving the rights of transgender employees, in federal district court in Michigan against a funeral home that fired Aimee Stephens once she announced that she would begin living as a woman. EEOC v. R.G. & G.R. Harris Funeral Homes, Inc., 201 F. Supp. 3d 837, 840 (E.D. Mich. 2016), rev'd, 884 F.3d 560, 566 (6th Cir. 2018). The district court agreed with the funeral home that Title VII does not protect transgender employees from discrimination; however, the Sixth Circuit reversed on appeal. Id.

Id. at *9. Accordingly, in light of the Supreme Court's recent decision, Defendant's argument that sexual orientation is not protected under Title VII must fail. Similarly, since "decisions construing Title VII are applicable to FCRA claims brought in federal court," Defendant's argument also fails under the FCRA. See Gamboa, 170 F. App'x at 611 (internal citation omitted). Consequently, the Motion to Dismiss as to Counts Three and Four is **DENIED**.

### iii. Marital Status Claim

Next, Defendant argues that Plaintiff's marital status discrimination claim must be dismissed. Pursuant to the FCRA, it is an unlawful employment practice for an employer to "discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's . . . marital status." Fla. Stat. § 760.10(1)(a). The Florida Supreme Court has held that the term "marital status," as used in the FCRA section prohibiting discrimination based on marital status, "means the state of being married, single, divorced, widowed or separated, and does not include the specific identity or actions of an individual's spouse." Donato v. American Tel. & Tel. Co., 767 So. 2d 1146, 1154–55 (Fla. 2000).

Defendant's sole argument against Plaintiff's marital status discrimination claim is that Plaintiff failed to exhaust her administrative remedies. (Dkt. 16 at 7–11) The Court has determined that this argument lacks merit based on the second paragraph of the EEOC Letter of Determination, which makes clear that Plaintiff's allegations in the Charge of Discrimination were sufficient to exhaust her administrative remedies. (See Dkt. 3-2 at 1) Additionally, the Complaint alleges that during the "hour-plus" termination meeting,

several topics were discussed with Plaintiff, including "the nature of divorce," Plaintiff's "reconciliation with her husband," Plaintiff's living arrangement with her former female co-worker, and the status of the former co-worker's marriage to her husband. (Dkt. 1 at ¶¶ 45–53) These allegations plausibly assert that Defendant is liable for marital status discrimination under the FCRA. (Id. at ¶¶ 43–59) Therefore, Defendant's Motion to Dismiss Count Five of the Complaint is **DENIED**.

### B. Negligent Retention Claim

As to the negligent retention claim asserted in Count Six, Defendant contends that it should be dismissed because "Plaintiff fails to plead that Defendant had knowledge of an employee's propensity to commit assault or properly allege pre-existing knowledge, resulting in a failure to state a claim." (Dkt. 16 at 11) Plaintiff responds that the Complaint, specifically "Paragraphs 33 and 34, indicate [that the Defendant] had a pattern of similar discriminating behavior against employees." (Dkt. 22 at 9–10) Plaintiff also contends that she should be "entitled to conduct discovery to determine if the employer knew or should have known about problems with this employee." (Id.)

The allegations asserted in the Complaint are unclear. The underlying tort from which the negligent retention claim appears to derive is an alleged assault that occurred while Plaintiff was in her former co-worker's home. (Dkt. 3 at ¶ 32) Specifically, Plaintiff asserts that her former co-worker's son and estranged husband, acting as agents of the Defendant, "accosted" her and videotaped her without consent. (Id.) The Complaint alleges that the estranged husband is "related to officials with Defendant and worked there during at least some of the relevant times." (Id. at ¶¶ 21, 32) It is not clear how the son is connected to the Defendant.

11

Under Florida law, negligent retention is a valid cause of action if "during the course of employment, the employer becomes aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." See Degitz v. Southern Management Servs., Inc., 996 F. Supp. 1451, 1462 (M.D. Fla. 1998) (citing Watson v. City of Hialeah, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989)). Liability attaches when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action. Garcia v. Duffy, 492 So.2d 435, 438–39 (Fla. 2d DCA 1986). To "prevail on a claim of negligent supervision, retention, or training, the plaintiff must demonstrate that the defendant employer owes a duty to the plaintiff, the breach of which is the proximate cause of the plaintiff's injuries." Watson, 552 So. 2d at 1146; see also Gutman v. Quest Diagnostics Clinical Labs., Inc., 707 F. Supp. 2d 1327, 1331–32 (S.D. Fla. 2010) (internal citation omitted). Additionally, "[t]he underlying wrong allegedly committed by an employee in a negligent supervision or a negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." Footstar Corp. v. Doe, 932 So. 2d 1272, 1278 (Fla. 2d DCA 2006).

Although Plaintiff's Complaint includes a cause of action for assault (Count Seven) involving two individuals alleged to be agents of Defendant, Plaintiff fails to state a claim for negligent retention because the Complaint does not allege any facts concerning which of these individuals was allegedly negligently retained. (Dkt. 3 at ¶¶ 90–93) The Complaint is also devoid of any facts alleging that Defendant had knowledge regarding the alleged negligently retained employee's propensity to commit assault.[2] (Id.) As Florida law

---

[2] To the extent that Plaintiff intends to use the past allegations of sexual assault referenced in paragraphs 33 and 34 of the Complaint to establish Defendant's knowledge of an employee's

12

dictates, "[l]iability attaches when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action." Garcia, 492 So.2d at 438–39. Accordingly, based on the face of the Complaint, the Court must **GRANT** Defendant's Motion to dismiss Count Six of Plaintiff's Complaint.

### C. Assault Claim

Lastly, Defendant asserts that Plaintiff's claim for assault must be dismissed because the Complaint fails to adequately plead a basis for Defendant to be held vicariously liable. (Dkt. 16 at 13) In this regard, Plaintiff alleges that agents of Defendant broke into Plaintiff's former co-worker's condominium and "videoed and accosted Plaintiff and her former co-worker" while they were talking on the bed "after 11 pm." (Dkt. 3 at ¶ 32) Plaintiff alleges, therefore, that she was "accosted" by agents of the Defendant and their actions were undertaken within the scope of their employment with Defendant. (Dkt. 22 at 10; see also Dkt. 3 at ¶ 32)

Under Florida law, assault is defined as "an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." FLA. STAT. 784.011. An employer is liable for an employee's intentional torts only "where the conduct occurs within the scope of the employment." Fields v. Devereux Foundation, Inc., 244 So. 3d 1193, 96 (Fla. 2d DCA 2018) (citing Garcia v. Duffy, 492 So. 2d 435, 438 (Fla. 2d DCA 1986)). In the case of intentional torts, "the employee's conduct must be of the kind he was employed to perform," must occur "substantially within the

---

propensity to commit assault, the claim must fail. There are no allegations of sexual assault raised in the Complaint. Therefore, in this instance, a past sexual assault allegation is insufficient to establish Defendant's knowledge of an individual's propensity to commit the type of assault alleged in the Complaint.

13

time and space limits authorized or required by the work to be performed' and must be activated at least in part by a purpose to serve the master." Id. (internal quotations omitted). Thus, "an employer can generally be held vicariously liable for an intentional tort where the employee's tortious conduct is undertaken in furtherance of the employer's interests." Id. (internal citations omitted).

Plaintiff's claim, if proven, could reasonably support a jury finding that the alleged tortious conduct was undertaken in the performance of a job duty and motivated to serve Defendant's interests and concerns about Plaintiff's living arrangements with her former co-worker. Accordingly, Defendant's Motion to Dismiss Count Seven is **DENIED**.

**IV.    CONCLUSION**

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendant Gospel Crusade, Inc.'s Motion to Dismiss, (Dkt. 16), is **GRANTED IN PART and DENIED IN PART**. The Motion to Dismiss is **GRANTED** as to Count Six. Otherwise, the Motion to Dismiss is **DENIED**.

2. Count Six of Plaintiff's Complaint, (Dkt. 3), is **DIMISSED WITHOUT PREJUDICE**. Plaintiff **SHALL** file an amended complaint **within twenty-one (21) days of the date of this Order that cures the defects or deletes the claims for negligent retention**.

    a. If Plaintiff chooses to cure the defects, Plaintiff shall clarify (i) which employee Plaintiff contends was negligently retained; (ii) the knowledge Defendant allegedly possessed regarding that employee's propensity to commit assault; and (iii) a basis that renders paragraphs 33 and 34 of the Complaint relevant.

b. If Plaintiff is unable to plead sufficient allegations regarding the negligent retention claim at this time, Plaintiff will be afforded an additional opportunity to amend the complaint once discovery ensues.

3. Defendant **SHALL have fourteen (14) days** from the date the amended complaint is filed to file an Answer.

4. In light of the Court's dismissal of the Complaint, Defendant's Partially Unopposed Motion to Strike, (Dkt. 17), is **DENIED AS MOOT**. The Court notes, however, that if the negligent retention claim remains in the amended complaint and Plaintiff can articulate a basis that renders paragraphs 33 and 34 relevant, the paragraphs may remain in the amended complaint. Otherwise, the paragraphs shall be deleted as superfluous and salacious.

**DONE** and **ORDERED** in Tampa, Florida, this 13th day of July, 2020

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person